# GETMAN SWEENEY

Getman & Sweeney, PLLC<br>
9 Paradies Lane<br>
New Paltz, NY 12561<br>
845-255-9370<br>
fax 845-255-8649

December 30, 2010

Judge Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Morganelli, et al., v. Chemed Corp. and Roto-Rooter Services Co.*, 10-cv-00876 (BMC)

Dear Judge Cogan,

Plaintiffs submit this letter in compliance with Your Honor's December 20, 2010 Order.

Plaintiffs raise three claims in this case: (1) that Roto-Rooter violated the minimum wage laws by shifting expenses to Technicians; (2) that Roto-Rooter made illegal deductions to Technicians' pay; and (3) that Technicians were not compensated for all their work time because Roto-Rooter failed to fully record Technicians' work time and fraudulently manipulated time sheets. Plaintiffs' claims are shown by Defendants' written policies and practices that Defendants have admitted in sworn testimony.

For example, Plaintiffs' claims of minimum wage violations and illegal deduction claims are based on Defendants' company-wide policies. Roto-Rooter's Policy No. 475 explains that when a Technician incurs so much in company business expenses that his pay falls below minimum wage, Roto-Rooter simply reports the expenses in the future week rather than paying the Technician the minimum wage. *See* Rec. Doc. No 159-2, Policy No. 475 at BSN 5006 (explaining that if the expenses exceed the commissions minus the minimum wage, the excess expenses will be carried over to another pay period); *see also* Rec. Doc No. 17-11, Weekly Drivers Reports (showing the carryover of substantiated expenses).. Roto-Rooter's Handbook explains its policy of making deductions from Technicians' pay for warranty work, customer refunds, and bad checks. Rec. Doc No. 159-11 at 5.

Similarly, Plaintiffs claim that Technicians' work time is not recorded is based on Roto-Rooter's nationwide policy that Technicians are not compensated for the time they spend maintaining and repairing their vans, Rec. Doc. No. 159-12, 30(b)(6) Sander Deposition ("Sander Depo") at 148-9-150:16,, and Roto-Rooter's admission that Technicians can work outside their scheduled

1

hours, but when they do, they cannot record the time on Roto-Rooter's time keeping system. *Id.* at 139:12- 147:25.

Roto-Rooter has also admitted that its management fraudulently altered Technicians' time sheets. For example, Defendants' May 2009 Internal Audit report states that "we have substantiated this allegation [of fraudulently reducing technician's hours worked in an effort to reduce premium pay expense] and further believe this is not an isolated situation." Rec. Doc. No. 159-8 at 1. Gary Sander, an Executive Vice President who reports directly to the CEO, testified that he investigated allegations of time sheet fraud in Connecticut in 2008. He was able to determine that the fraud had taken place by examining the Company's electronic records—records that are maintained for all offices on a computer at the Company headquarters. Rec. Doc. No. 159-12, Sander Depo. at 154:8-161:21 (testimony regarding altering time records in Connecticut). Roto-Rooter has further admitted that the alterations are shown in its time and payroll databases, including the original time entry, the changed entry, the person who made the change, when the change was made, and the reason code for the change. *Id.* at 115-120; Rec. Doc. No.159-13, Poppe 30(b)(6) deposition at 68:5-70:6.

Strikingly, Roto-Rooter has also admitted that although it knew of the practice of fraudulently altering Technician time records, it did nothing to prevent it. The May 2009 Internal Audit report states that "no controls or processes are planned to identify or prevent intentional and fraudulent manipulation of time records." Rec. Doc. No. 159-8 at 1. And Sander testified that despite having the means to determine whether other branches were involved in the same activity, he did not investigate any other offices because he "wasn't asked to." Rec. Doc No. 159-12, Sander Depo. at 186:20. In fact, he never even shared the information with the Internal Audit department. *Id.* at 169.

On June 15, 2010, the Court conditionally certified a FLSA collective action for commissioned technicians nationwide. Rec. Doc. No. 65. Notice went to the class on July 20, 2010. Notice was sent to 40 class members left off the original notice list on September 21. Plaintiffs moved for certification of FRCP 23 state law class actions on November 12, 2010. Rec. Doc. No 159. Defendants are to oppose the motion by January 24, 2011. Rec. Doc. No. 183.

On November 10, 2010, the Court gave RR the opportunity to depose a sample of the opt-in Plaintiffs comprised of 40 Plaintiffs. The Order did not provide that particular Plaintiffs were required to appear for deposition. Doc. No. 157. RR noticed depositions of the Plaintiffs in November, and began taking depositions on November 29. Roto-Rooter has not claimed that the particular people it chose to depose are indispensable to its discovery or litigation claims, nor could it do so. Where people have been unavailable in the past, the plaintiffs have substituted appropriate replacements without complaint. The individuals chosen by Defendants as representatives were simply opt-in Plaintiffs – i.e., class members who chose to be represented by the named Plaintiffs.

Plaintiffs have made every effort to provide RR with the discovery it seeks. Plaintiffs responded to RR's discovery requests for many of the deponents well before the 30 day deadline provided

in the FRCP.[1]  We have made the deponents available even though defendants failed to fully respond to plaintiffs' discovery requests for the deponents' records.  Rather than object, Plaintiffs have made every attempt to provide those people that Roto-Rooter sought to depose within the time frame set by Roto-Rooter.

To date, the parties have conducted 31 depositions and additional depositions have been scheduled.  The Parties contemplate and are working towards Defendants being able to depose the full 40 opt-in Plaintiffs the Court allowed.

Certain of the people who Roto-Rooter noticed for deposition have not responded.  Several Plaintiffs—Wiggins, Hicks, Ash, Gerbino, and Harris—have not responded or stopped responding for some unknown reason.  Others—Ogami, Morris, Johnson, and Sells—responded but declined to participate because they are fearful that as current Roto-Rooter employees they will jeopardize their employment with Roto-Rooter by participating in discovery.  Another Plaintiff, John Jordan, is recovering from a long-term disability and is hopeful that Roto-Rooter will hire him back once is able to work.  While Jordan initially agreed to be deposed, after speaking to current employees who are in the case, he refused to participate in discovery for fear of retaliation.  Another Plaintiff, Ronald Stanley, responded that he is living pay check to pay check and cannot afford to take time from work for a deposition and the promise of recovery sometime in the future.  Accordingly, they have not responded to discovery.

In each case, Plaintiffs have informed Defendants that the person identified is not responding or is refusing to attend and another person has been identified in his stead.  Given the tight discovery schedule, Plaintiffs have not objected to expedited discovery on the substituted Plaintiffs and have made every effort to provide discovery and schedule depositions, often within a very tight schedule.  Plaintiffs have made every effort to make sure that Defendants will have all 40 of the depositions they requested and that they will have documents and interrogatory responses prior to those depositions.

**Argument**

There is a strong preference in this Circuit "that litigation disputes be resolved on the merits, not by default."  *Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243, 249 (2nd Cir. 1996)(citations omitted).

"In order to dismiss a plaintiff's claim under Fed.R.Civ.P. 37(d) for failure to appear at a deposition, the court 'must: (1) find willfulness, bad faith, or fault on the part of the party refusing discovery, and (2) give notice ... that violation of the court's order will result in dismissal of the case with prejudice.' *Connell v. City of New York,* 230 F.Supp.2d 432, 436 (S.D.N.Y.2002). The court must also find that 'Defendants were seriously prejudiced by [Plaintiffs'] actions....' *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 887

---

[1] Indeed, virtually all the documents requested are documents or information that Roto-Rooter originally provided to the Plaintiffs or that Plaintiffs submitted to Roto-Rooter as part of their jobs.  Most of the information is contained in the company's databases.  Although it has been tremendously difficult to gather and copy and provide these documents on the short schedule demanded—documents that Roto-Rooter has in its possession--Plaintiffs' counsel has worked very hard to give Roto-Rooter everything within its power to provide.

(S.D.N.Y.1999)." *Diaz v. Scores Holding Co., Inc.*, 07 Civ. 8713, 2008 WL 7863502, 7 (S.D.N.Y. May 9, 2008); *see also*, *Ayers v. SGS Control Services, Inc.*, 03 Civ 9077, 2007 WL 646326, 13 (S.D.N.Y. Feb. 27, 2007)(same). Moreover, in determining whether to dismiss claims for failure to provide discovery, courts typical take into account the facts and circumstances of the particular case. *See*, *Marfia*, 100 F.3d at 249-252; *Connell,* 230 F.Supp.2d at 436.

In this case, there has been no finding of fault on the part of the few Plaintiffs that have failed to appear for deposition. In the case of Wiggins, Hicks, Ash, Gerbino, and Harris the reason for non-compliance is simply unknown. It is unclear whether they have fallen into some personal misfortune, suffered some health catastrophe, been called to serve overseas, or have had some other life event that has prevented them from participating. In a class of more than 450 opt-in plaintiffs, it is not uncommon for some not to respond. *Ayers*, 2007 WL 646326, 13; *Diaz*, 2008 WL 7863502, 7. However, these claims should not be dismissed. *Id*.; *Connell*, 230 F.Supp.2d at 436.

In the case of other Plaintiffs, the circumstances of their failure to appear weigh in favor of not dismissing their claims. Ogami, Morris, Johnson, and Sells, all current Roto-Rooter employees, have responded that they fear for their jobs if they participate. Both Ogami in Hawaii and Johnson in California have seen others bring wage-and-hour suits against Roto-Rooter in the past, only to suffer discrimination. While not a current employee, Jordan also responded that he will not appear for fear of future retaliation. Stanley's reason for not sitting for deposition is also understandable. He is supporting a family, living paycheck to paycheck. He should not be punished for balancing the prospect of a future recovery of some unknown amount against putting food on the table today.

Even if there were a finding of willfulness, bad faith, or fault, there is no evidence that Plaintiffs received notice "that violation of the court's order will result in dismissal of the case with prejudice.'" *Ayers*, 2007 WL 646326, 13 *quoting Connell,* 230 F.Supp.2d at (S.D.N.Y. 2002). Indeed, there has been no order that particular Plaintiffs appear for deposition, only that Defendants be able to depose a sample of the opt-in Plaintiffs. Without evidence of the appropriate notice to individual Plaintiffs, the claims cannot be dismissed. *Id*.

The circumstances of the case weigh against dismissal of claims. As an initial matter, most of the discovery representatives that Defendants have identified are current employees who have a sound basis for fearing retaliation. In the depositions that have taken place so far, many Plaintiffs have testified that Roto-Rooter threatened them with punishment if they chose to exercise their FLSA rights. For example, Technicians testified that they were required to sign altered time sheets in ordered to be paid. *See, e.g.,* Saint Juste deposition transcript at 129-132; Hollister deposition transcript at 69:19-72:6; McMahon deposition transcript at 63:6-12; ,Ercole deposition transcript at 79:14-80:14, all included in Ex. A.. Many employees understood this to mean that they would suffer a loss of income or termination if they did not comply. *See, e.g*. Cain deposition transcript at 133:14-22; Branco deposition transcript at 75:16-76:11; Bradley

deposition transcript at 139:6-11; Morangelli deposition transcript at 67:6-68:9, all included in Ex. B.[2] In this type of an employment environment, fear of retribution is warranted.

Defendants have the opportunity to take the 40 depositions the Court ordered. That does not require that particular class members should lose their valid FLSA claims because they are unable to take or they fear taking a more direct participatory role in the litigation. There is an exquisite torture to working people whose personal or family needs depend upon every paycheck, or depend upon health insurance for critical medical needs, when they feel coerced into not standing up for their rights. And these workers' fears are not irrational. FLSA retaliation is common place and working people have generally had plenty of opportunity to have heard such threats during their working lives. Even where workers have no valid basis for fearing retaliation (and that is not the case here), the general inchoate risk of later employer displeasure would likely dissuade numerous workers that they would be better off foregoing a small, uncertain, and presently incalculable FLSA recovery. These workers simply should not have to give up their valid FLSA claims. It is not as if the threat of sanction will actually accomplish the cooperation that the Court and indeed all parties want. Thus, the sanction would be merely punitive and it would be punishing behavior that is reasonable, even if inconvenient to us all. The fearful class members should not lose their claims for this remediable inconvenience.

Dismissing the claims would also be contrary to the spirit of the FLSA. An important policy behind the FLSA collective action procedure is the ability to bring small claims collectively. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.") Without this advantage, many employees would not bring their claims because the resources required to bring them exceed the potential recovery. For many class members in this case, the cost of participating in the discovery process in terms of lost wages and out-of-pocket expenses may exceed the value of a payment sometime in the future. Dismissing such claims would not be in keeping with Congressional intent.

As importantly, Roto-Rooter suffers no prejudice from specific Plaintiffs not appearing for deposition. The Court granted Roto-Rooter the opportunity to depose a sample of the more than 400 opt-in plaintiffs in this case. The parties are working hard to ensure that Roto-Rooter has the opportunity to depose that sample. When one deponent is unavailable for discovery, the parties have substituted another, based on the choice of the designating party. Roto-Rooter cannot claim that not having access to all the exact people they choose is prejudicial. For if Roto-Rooter can only identify a few Plaintiffs who are not typical of the class, Plaintiffs' claim that the class is typical would be borne out.

And while Roto-Rooter will not be prejudiced by the substitution of other deponents for the few who refuse to respond, those individuals should not be dismissed because their FLSA claims are just as valid as the others' and their participation is not necessary. The FLSA statute is interpreted broadly to fully implement its critical remedial purposes. *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). The Supreme Court has held that

---

[2] This is but a sample of the testimony as Plaintiffs counsel has not received transcripts of all the Plaintiffs' testimony.

FLSA claims are unwaivable except when a Court determines in litigation that the waiver represents a fair resolution of disputed claims. *D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).

> An agreement by appellee not to claim overtime pay for the work here in question would be no defense to his later demanding it. *Overnight Motor Transp. Co. v. Missel,* 1942, 316 U.S. 572, 577, 62 S.Ct. 1216, 86 L.Ed. 1682. Similarly, an express release by the employee is invalid, and this even though the release is limited to the claims for liquidated damages and was made in settlement of a bona fide dispute, *D. A. Schulte, inc. v. Gangi,* 1946, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114.

*Caserta v. Home Lines Agency, Inc.* 273 F.2d 943, 946 (2d Cir. 1959)(employee's submission of false time sheets failing to record all time worked does not waive claim). These Plaintiffs have not evidenced any desire to waive their claims entirely. There is no reason that they should. The Court and the parties have an interest in seeing that the Plaintiffs provide the Defendants with their legitimate discovery needs. However, Plaintiffs can do that without taking away any specific Plaintiffs' claims for non-compliance.

Accordingly, the Court should not dismiss the claims of the Plaintiffs who fail to appear for deposition. Roto-Rooter has the opportunity to depose 40 opt-in Plaintiffs, as the Court ordered. It is not prejudiced by not deposing particular Plaintiffs, and the circumstances weigh against dismissing claims.

Respectfully submitted,

 */s/ Michael J.D. Sweeney*

Michael J.D. Sweeney (MS 7959)