**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANTHONY MORANGELLI, et al., individually and on behalf of all others similarly situated,** <br><br> **Plaintiffs,** <br><br> -against- <br><br><br> **CHEMED CORPORATION and ROTO-ROOTER SERVICES COMPANY,** <br><br> **Defendants.** | **1:10-CV-00876 (BMC)** |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

Respectfully submitted,

s/ Michael J.D. Sweeney

Michael J.D. Sweeney (MS 7959)
Carol Richman (CR1256)
Ed Tuddenham, of counsel (on the brief)
Getman & Sweeney PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370
Fax: (845) 255-8649
msweeney@getmansweeney.com

Brent Pelton (BP 1005)
PELTON & ASSOCIATES
111 Broadway, 9th Floor
New York, NY 10006
Telephone: (212) 385-9700
Fax: (212) 385-0800
pelton@peltonlaw.com

*Attorneys for plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

I.      "BUSINESS EXPENSE" CLAIMS SATISFY RULE 23(B)(3) .................2

II.     UNCOMPENSATED HOURS CLAIM SATISFIES RULE 23(B)(3) ........5

        A. Shaving of Time Records ...........................................................6

        B   Turn-in and Meeting Time ......................................................10

        C.  Van and Equipment Maintenance ...........................................13

III.    ILLEGAL DEDUCTION CLAIM SATISFIES RULE 23(B)(3) ...............18

IV      SUPERIORITY ..................................................................................19

V.      THE CLASS REPRESENTATIVES SATISFY RULE 23(a) ...................22

CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

Cases:                                                                                      Page(s):

*Anderson v. Mt Clemons Pottery,* 328 U.S. 680 (1946) ..........................................8

*Barrus v. Dicks Sporting Goods, Inc.,* __F.Supp. ___,
2010 WL 3075730 (W.D.N.Y. 2010) .............................................................. 19-20

*Benedict v. Altria Group, Inc.,* 241 F.R.D. 668 (D.Kan. 2007).............................24

*Cortez v. Nebraska Beef, Inc.,* 266 F.R.D. 275 (D. Neb. 2010)............................17

*Doyel v. McDonald's Corporation,* 4:08cv1198,
2010 WL 3199685 (E.D. Mo. Aug. 12, 2010) ........................................................8

*Driver v. AppleIllinois,* 265 F.R.D. 293 (N.D. Ill. 2010)...................................... 7-8

*Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29 (E.D.N.Y. 2008)....................23

*Frank v. Gold'n Plump Poultry,* No. 04-CV-1018 (PJS/RLE),
2007 WL 2780504 (D. Minn. Sept. 24, 2007) ................................................. 15-16

*Garcia v. Tyson Foods,* 255 F.R.D. 678 (D. Kan. 2009)......................................17

*Gortat v. Capala Bros., Inc.,* No. 07-CV-3629 (ILG),
2010 WL 1423018 (E.D.N.Y. April 9, 2010) ........................................................24

*Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363 (S.D.N.Y. 2007)... 23-24

*In re Bally Total Fitness,* 411 B.R. 142 (S.D.N.Y. 2009).......................................5

*In re Nassau Co. Strip Search Cases,* 461 F.3d 219 (2d Cir. 2006).....................14

*In re Tyson Foods,* 694 F.Supp2d 1372 (M.D. Ga. 2010) ....................................17

*In re Visa Check Antitrust Litigation,* 280 F.3d 124, 136 (2d Cir. 2001)..........5, 13

*In re Zyprexa Products Liability Litigation,* 253 F.R.D. 69 (E.D.N.Y. 2008) ......24

*Kasten v. Saint-Gobain Performance Plastics Corp.,*
556 F.Supp.2d 941 (W.D. Wis. 2008) .................................................................17

*Liles v. American Corrective Counseling Services, Inc.,*
231 F.R.D. 565 (S.D. Iowa 2005).........................................................................25

*McLaurin v. Prestage Foods, Inc.* __ F.R.D. ___,

2010 WL 4693662 (E.D.N.C. 2010) .......................................................................17

*Myers v. Hertz Corp.,* No. 02 Civ. 4325(BMC)(MLO),
2007 WL 2126264 (E.D.N.Y. July 24, 2007) ................................................. 22-23

*Noble v. 93 University Place Corp.,*
224 F.R.D. 330 (S.D.N.Y. 2004) ................................................................... 23-34

*Reich v. IBP,* 820 F.Supp. 1315 (D.Kan. 1993) ................................................13, 16

*Tyler v. Alltel Corp.,* 265 F.R.D. 415 (E.D. Ark. 2010) .......................................21

<u>Statutes and Regulations</u>

29 C.F.R. §§ 531.32 & 531.35 ..............................................................................3

Conn.Gen.Stat. § 31-71e(2) ................................................................................18

Minn. Stat. Ann. §177.24(4)(2) ............................................................................4

Minn. Stat Ann. § 181.79 ....................................................................................19

NC Gen. Stat. §95-25.8 .......................................................................................17

Wash. Admin. Code §§296-126-028 .....................................................................4

Plaintiffs move to certify their state law claims as Rule 23(b)(3) class actions on behalf of all individuals who worked as commissioned technicians for Roto-Rooter in the following 14 States:  New York, New Jersey, California, Colorado, Connecticut, Florida, Hawaii, Illinois, Indiana, Minnesota, Missouri,[1] North Carolina, Ohio, and Washington.  Plaintiffs' state law class claims mirror their Fair Labor Standards Act (FLSA) claims which were previously certified for collective action treatment.   Specifically Plaintiffs allege that Defendants Chemed Corporation and Roto-Rooter Services Company (together "Roto-Rooter") violated the FLSA as well as the applicable State minimum wage law by:

1.  imposing business expenses on Technicians that had the effect of bringing their wages below the applicable minimum wage (hereafter "business expense claim"); and

2.  failing to compensate Technicians for all hours of work, including, but not limited to, time shaved from their actual hours of work,  time spent at turn-in and other meetings, and time spent maintaining their vans and work equipment (hereafter "uncompensated hours claim").

In addition Plaintiffs seek Rule 23 class certification of their claim that Roto-Rooter violated State wage payment laws by:

3.  Taking deductions from the Plaintiffs' wages in violation of State law (hereafter "illegal deductions claim").

Roto-Rooter's brief in opposition to class certification raises a number of objections to Plaintiffs' motion for class certification, most of which are irrelevant or reflect a misunderstanding of the nature of Plaintiffs' claims.  As the primary focus of Roto-Rooter's arguments is on the predominance and superiority requirements of Rule 23(b)(3), Plaintiffs will begin by addressing those arguments.  Finally Plaintiffs will address Roto-Rooter's Rule 23(a) objections.

---

[1] The Missouri class claim was added after Plaintiffs' initial motion for class certification. Jan. 21, 2011 Order granting Plaintiffs' Motion to Amend/Correct/Supplement Rec. Doc. No. 186.

## I. "BUSINESS EXPENSE" CLAIMS SATISFY RULE 23(B)(3)

Plaintiffs allege that Roto-Rooter had a uniform policy requiring all Technicians to incur business expenses for vans, equipment, and supplies on its behalf, and a uniform policy of paying Technicians wages without regard to the total expenses Technicians incurred in any given week. As a result of these policies the total expenses incurred by Technicians in some weeks were great enough to reduce their wages below the required state minimum wage level. Plaintiffs' challenge to these uniform policies presents the common legal question whether such policies violate state minimum wage laws. Moreover, damages for this violation can be determined on a class-wide basis by applying a common damage formula to Roto-Rooter's payroll records which, for most class members, clearly list the "substantiated expenses" incurred each week (*i.e.*, expenses that Roto-Rooter treated as reimbursable), the hours worked, and the wages paid.[2] A single witness who has analyzed the payroll records can identify each week in which a class member received less than minimum wage as a result of the "substantiated expenses" he incurred.

Roto-Rooter disputes this, pointing out that "each jurisdiction sets its own minimum wage that changes over time, requiring individualized analysis to determine if a particular employee was actually paid minimum wage during a particular time period." But variation in the applicable minimum wage does not create "individual" issues, it simply means that the applicable minimum wage must be inserted in the common damage formula.

---

[2] Exh. N, Rec. Doc No. 17-11.

Roto-Rooter also argues that the actual business expenses incurred by Technicians will vary from Technician to Technician.  That may well be true, but is entirely irrelevant.  The claim does not focus on the particular expenses incurred by each Technician but on whether the total amount of business expenses incurred by Technicians in any given week was so large as to reduce their wages below the minimum.  Because the total expense amount is readily available from the payroll records, the individual expenses that make up that total are irrelevant: the total either reduces wages below the minimum or it does not.  The particular business expenses incurred by an individual would only be relevant if Roto-Rooter were arguing that some of them were not actually business expenses.  However, Roto-Rooter does not, nor could it, make such an argument because it limits the expenses that Plaintiffs can claim as substantiated expenses to business expenses incurred on behalf of Roto-Rooter.[3]

Roto-Rooter argues that states do not uniformly prohibit business expenses from cutting into the minimum wage and that determining the requirements of each state law would be unmanageable.  Plaintiffs strongly disagree: a ban on reducing wages below the minimum by shifting the employer's business expenses on to the worker is implicit in the adoption of a mandatory minimum wage.  To allow an employer to reduce that wage by shifting its own expenses on to an employee would make the minimum wage meaningless.[4]  In any event, Roto-

---

[3] Exh. A (Rec. Doc. No. 159-2), Policy 475 at BSN 5004-05; Poppe Depo at 40:24-41:41:11. Part of the reason that Roto-Rooter's arguments in this regard are so off the mark is that Roto-Rooter mischaracterizes Plaintiffs' claim as a claim "that they are entitled to be paid for certain business expenses." Rec. Doc. No. 192 at 28.  That is NOT what Plaintiffs claim at all.  Rather they claim that they are entitled to receive minimum wage and if the business expenses they incur for Roto-Rooter bring their wages below the minimum, they are entitled to have their wages increased up to the minimum wage.

[4] This is made clear by the FLSA.  The statute itself says nothing about shifting business expenses to employees.  Nevertheless, the Department of Labor has interpreted the statute as

3

Rooter only identifies two states, Minnesota and Washington, which it asserts allow business expenses to cut into minimum wage earnings. Roto-Rooter's analysis of both those states' laws is clearly incorrect. Minnesota Stat. §177.24(4)(2) prohibits business expenses for equipment to reduce wages below the statutory minimum with the only exception being "equipment that may be used outside the employment." However, because Roto-Rooter expressly prohibits Technicians from engaging in outside plumbing employment, that exception does not apply.[5] Wash. Admin. Code §296-126-028 only authorizes deductions to cut into the minimum wage when they are "for a lawful purpose for the benefit of the employee" and specifically prohibits such deductions from which the employer derives financial benefit. *See* Wash. Admin. Code §§ 296-126-028(2) & (3). Plainly Roto-Rooter derives financial benefit from Technicians incurring its business expenses, making it illegal for such expenses to cut into Washington State minimum wage.[6]

Roto-Rooter's argument that factual differences among Technicians precludes certification is equally without merit. Plaintiffs have already addressed the argument that different Technicians incurred different expenses. The fact that the New Jersey branch provides Technicians with an $800 tool allowance before charging workers for tools is similarly irrelevant. The existence of such an allowance may reduce the total business expenses incurred by workers in New Jersey (at least until the allowance is exhausted), but it doesn't affect the

---

implicitly prohibiting employers from reducing wages below the statutory minimum by requiring employees to pay business expenses that benefit the employer, 29 C.F.R. §§ 531.32 & 531.35.

[5] Exh. P, Handbook (revised 2/2009) at 25, "Service Technician Regulations" at ¶1; Exh. Q, Sander Depo. at 55.

[6] The other State minimum wage statutes explicitly prohibit an employer's business expenses from cutting into minimum wage or, like the FLSA, do so implicitly by setting a minimum wage that an employer must pay. Appendix 2, List of State Laws.

4

commonality of the claim at all: with or without the advance, if the payroll records show that a New Jersey Technician's expenses in a given work week brought his earnings below the applicable minimum wage, there is a violation.[7]

Finally, Roto-Rooter argues that some Technicians did not submit their business expenses to it each week but chose instead to list them on their federal income tax returns.[8]  While damages for these individuals will not be calculable from the payroll records alone, that should not pose a significant manageability problem inasmuch as the expenses for these individuals can be proven through Technicians' tax returns and the receipts kept as supporting documentation for the tax returns.  The fact that some individual testimony is needed to prove damages should not defeat class certification.  *See In re Visa Check Antitrust Litigation,* 280 F.3d 124, 136 (2d Cir. 2001).

## II.  UNCOMPENSATED HOURS CLAIM SATISFIES RULE 23(B)(3)

Roto-Rooter's argument that Plaintiffs' uncompensated hours claim cannot be proven on a class-wide basis is best addressed by examining each of the three components of that claim: the

---

[7]  *In re Bally Total Fitness,* 411 B.R. 142, 146-147 (S.D.N.Y. 2009), a case cited by Roto-Rooter, does not help its argument.  That case denied class certification because it concluded that individual mini-trials would be necessary, but nothing in the case explains what exactly the claims were or why individual trials would be needed.  There was no indication that the monies claimed in that case could be proven from the payroll records as they can be here.

[8]  Technicians were supposed to submit their "substantiated expenses" to Roto-Rooter each week to have a portion of their commission earnings categorized as reimbursement for those expenses and no employment taxes were taken out of that portion.  Exh. A (Rec. Doc. No. 159-2), Policy 475 at BSN 5004-05.  Technicians who chose instead to itemize their business expenses on their income tax returns paid employment taxes on all of their commission payments which were treated as wages.  Because Roto-Rooter did NOT reimburse business expenses, a worker's gross earnings remained the same whether he reported expenses to Roto-Rooter or listed them on his tax return.

shaving of hours, the failure to pay for turn-in and other meeting time, and the failure to pay for time expended on van and equipment maintenance.

### A.  Shaving of Time Records

As an initial matter, there is no question that Roto-Rooter fraudulently manipulated Technicians' time records and that Roto-Rooter knew that it was a widespread practice.[9]  After his third investigation into allegations of such fraud, J Eric Eaton, Chemed's Director of Internal Audit, admitted that "it appears that the [Atlanta] branch and others" are engaged in the practice, and Roto-Rooters' executive management knew that the practice was widespread.[10] Nevertheless, Roto-Rooter turned a blind eye to the practice.[11]

As set forth in Plaintiffs' opening brief, Plaintiffs' hours shaving claim is appropriate for class certification because not only is this violation a result, at least in part, of Roto-Rooter's national policy to do nothing to stop this violation, but the violation can be proven for the class as a whole from Roto-Rooter's payroll records.  Those records contain sufficient detail that it is possible to demonstrate that certain time entries and alterations to time entries were the result of intentional shaving of hours.  Indeed, Roto-Rooter determined that Technician time records were

---

[9] *See* Exh. G (Rec. Doc. No.159-9), internal audit reports for Georgia, Ohio, and Florida; Exh. Q, Sander Depo. at 154-55, 161-63, 185-86, 235-36.

[10] Mr. Eaton's declaration in support of the opposition contradicts his May 2009 Report that "While the risks of immediate termination should be seen as greater than the potential benefits [of fraudulently altering time records], it appears the ATL branch and others are playing the odds."  Exh. G at BSN 4785.

[11]  *Id.*  (internal audit report stating that "no controls or processes are planned to identify or prevent intentional and fraudulent manipulation of time records"); Exh. Q, Sander Depo. at 186 (Although Sander determined shaving occurred in Connecticut through an analysis of electronic records, he did not apply the analysis to any other branches because "I wasn't asked to.")

manipulated in the Connecticut branch by analyzing the electronic payroll records.[12]  If Roto-Rooter can use its payroll records to establish illegal hours shaving for workers in particular branch offices, Plaintiffs should be permitted to do the same thing for the class as a whole.  It is simply a matter of applying the same method of record analysis to the rest of the records.

Roto-Rooter's principal response to this claim is that there are legitimate reasons for altering time records and that simply because there is an alteration of the original entry time records does not prove that hours were improperly shaved.  That is, of course, true, but Plaintiffs are not claiming that every altered time entry is hours shaving or even evidence of such a violation.   Rather, Plaintiffs claim focuses only on those alterations where the records themselves demonstrate that it is more likely than not that no legitimate reason for the alteration exists.  For example, where the payroll records show that an employee originally reported working two hours on a job, there is a substantial invoice for the work, and the record is changed at a later date to give him credit for only a minute or two, a jury could reasonably conclude that the record was fraudulently manipulated.[13]  Roto-Rooter concedes that it was able to identify alterations to the time records in the Connecticut office that "created a temporal impossibility" and were therefore "readily identifiable as improper."  Rec. Doc. No. 192 at 19-20.  There is no reason why Plaintiffs cannot prove similar violations on behalf of the class by examining the rest of the payroll records.

---

[12] Exh. Q, Sander Depo. at 154-55, 161-63, 185-86, 235-36.

[13]  Roto-Rooter has established the normal time that any given job should take. Exh. Q, Sander Depo. at 118. If a billing record shows that a Technician performed this task but his time record shows only one or two minutes for work that normally takes two hours, a jury could reasonably conclude that the entry represents hours shaving.

The fact that Roto-Rooter's time-keeping records are sufficiently detailed that, by themselves, they provide clear proof of hours shaving is what distinguishes this case from the hours shaving cases relied on by Roto-Rooter such as *Driver v. AppleIllinois,* 265 F.R.D. 293 (N.D. Ill. 2010), and *Doyel v. McDonald's Corporation,* 4:08cv1198, 2010 WL 3199685 (E.D. Mo. Aug. 12, 2010).  In both of those cases, the time records lacked detail; they showed when a time entry had been changed, but they did not show anything else.  In such circumstances, the records alone were insufficient to prove hours shaving.  As the court in *Doyel* explained,

> merely looking to records of time punches that were edited does not establish that an employee was not paid for hours worked.  To make a prima facie showing on the question of whether the class of employees were paid for all time worked, plaintiffs will need to present evidence of why their time punches were altered.  This evidence will vary from member to member, and from time punch to time punch.

*Id.* at *4.  Here, by contrast, the time records are extraordinarily detailed and provide enough information to make out conclusive proof of such shaving. As a result, individual testimony from class members regarding the circumstances surrounding each of the challenged time punches will not be necessary to prove improper shaving of hours.  In this regard, Plaintiffs' claims are more analogous to the claim in *Driver* that workers were paid at the tipped-employee rate to perform non-tipped activities.  265 F.R.D. at 308-313.  The *Driver* Court found that claim appropriate for class certification because the employer's payroll records were sufficiently detailed to present the evidence efficiently.  *Id.* at 313.  Plaintiffs' claim that hours were shaved from their records is similar.

Roto-Rooter argues that Plaintiffs did not keep track of the time that was improperly taken away from them.  That argument is irrelevant for two reasons.  First, an employee has no duty to keep records of his time; if uncompensated time is found to have occurred, a court may

8

determine the amount of time as a matter of just and reasonable inference based on employee estimates and other available evidence. *Anderson v. Mt Clemons Pottery,* 328 U.S. 680, 687-688 (1946). More importantly, with respect to the hour-shaving claim, because Roto-Rooter maintains the original entry time record as it existed prior to an alteration, and has established standard work times for each kind of job, the amount of time shaved in any given instance can be calculated from the payroll records themselves. Again, no individual testimony will be required.

Roto-Rooter cites a number of facts that vary from Technician to Technician but which are wholly irrelevant to this claim. For instance, they point out that some states require payment of overtime for hours in excess of 12 per day. That may be but Plaintiffs make no claim for violation of that provision; their claim is for violation of regular weekly overtime amount.[14] Roto-Rooter cites the fact that some Technicians denied being encouraged to short their hours or keep their hours under 40 and others did not look at their hourly records and so have no idea whether their hours were shorted. Because Plaintiffs will be relying on the records themselves to prove violations, it does not matter whether a Technician was aware of that or not.

Roto-Rooter also claims that the etrace system, which generates the original entry and final time records, did not go into effect at the same time in each branch office.[15] However, Plaintiffs' claim does not turn on what proprietary time-keeping system Roto-Rooter used. The time keeping system in place prior to etrace also recorded the original entry time and the final time records and so will provide the same "readily identifiable" proof of improper shaving as the

---

[14] Roto-Rooter claims that different States have different provisions relating to meal and rest breaks is similarly irrelevant as Plaintiffs are not claiming that meal or rest breaks were shaved.

[15] That claim is contrary to the 30(b)(6) testimony of Roto-Rooter's Chief Information Officer, who testified that the all Technicians had been using the etrace software since 2001.

etrace records.[16]  Finally, Roto-Rooter asserts that different Technicians worked different shifts, but that too is irrelevant.  The claim focuses on the shorting of hours as revealed by the time records.  A Technician's shift is irrelevant: if the records show his hours were shaved he is entitled to compensation for the shaved hours.

### B. Turn-in and Meeting Time

Technicians expended time each week reconciling and turning in their invoices, receipts and expenses, and reviewing time records and compensation.[17]  Plaintiffs claim that the time was not recorded as hours of work  Technicians were also required to attend regularly scheduled office meetings.[18] As a matter of national policy, Technicians could not record this time; instead managers were supposed to have recorded the time as meeting time ("MT") or administrative

---

Exh. O, Poppe Depo at 23.

[16] *Id.* at 20-23 (testifying that time entry data from 2001 is kept on the company's SMS database.

[17] Bradley Tr. at 36-37, 113-114; Branco Tr. at 75-76; 83-84; Buono Tr. at 86-88; Cain Tr. at 91-92, 105; Castillo Tr. at 63-68; 74-76; Christie Tr. at 24-26; Cruz Tr. at 34-35; Drejaj Tr. at 49-50, 53; Ercole Tr. at 47-56; Frazier-Smith Tr. at 39-44; Gorman Tr. at 31-32; Harris Tr. at 33-40; Hodges Tr. at 25-43; Jeudy Tr. at 46-49; Jones Tr. at 63-72; Lawson Tr. at 30-32; Loetscher Tr. at 27-32; Mills Tr. at 27-28; Morangelli Tr. at 51-59; Morris Tr. at 68-70; Najmon Tr. at 31-32; 39; Poczok Tr. at 73-76; Roseme Tr. at 73-74; Sabas Tr. at 32-37; Saint Juste Tr. at 72-79; Smith Tr. at 92-106; 103; Soto Tr. at 88 -92; Stanley Tr. at 127; Van Horn, Tr. at 28-29, 85-86; Villatoro: Tr. at 39-40, 45-47; Yasuna Tr. at 41-45; York Tr. at 34.

[18] Bradley Tr. at 157; Branco Tr. at 41, 132;  Buono Tr. at 134; Cain Tr. at 122; Castillo Tr. at 99; Christie Tr. at 41; Drejaj Tr. at 48; Ercole Tr. at 130-131, 137-138; Frazier-Smith Tr. at 67; Gorman Tr. at 57-58; Harris Tr. at 76-77; Hodges Tr. at 63-64, 68; Hollister Tr. at 91; Jeudy Tr. at 43, 79;  Kennedy Tr. at 113-115; Lawson Tr. at 50-51, 96; Loetscher Tr. at 53;  Mills Tr. at 49-50; Morangelli Tr. at 98; Morris Tr. at 109-110;  Njamon Tr. at 71-72; 137;  Poczok Tr. at 111; Sabas Tr. at 61-63; Severino Tr. at 84-85;  Smith Tr. at 74;  Soto Tr. at 146, 148 Stanley Tr. at 133-134;  Van Horn, Tr. at 119-120, 129; Villatoro Tr. at 90-91; Yasuna Tr. at 71-72;  York Tr. at 29, 62-63.

time ("AD").[19]   However, Plaintiffs contend that they did not and that this violation can be proven on a class-wide basis from the payroll records.

Roto-Rooter's opposition argues that some class members were sometimes able to perform their turn-in duties while on stand-by time and that there will be no way to determine who did it off the clock and who did it on stand-by time without individual testimony from each Technician, thereby precluding class certification.

Here again, Roto-Rooter overlooks Plaintiffs' ability to prove their claims on a class-wide basis from the records themselves.  Roto-Rooter records the date and time that Technicians perform turn-in and it records the Technician's work hours.  Determining whether the Technician was on-the-clock for turn-in is simply a function of comparing the turn-in time with the recorded work hours.

The date and time that a Technician performs turn-in on any given week is recorded on each week's Preliminary Drivers Reports and Detailed Listing of Time.[20]  These reports are printed with a date and time stamp, while the Technician waits after turning in his paper work for the week.[21]  The Technician has to wait for the reports to be printed because he is required to review them and resolve any issues before the office can transfer the information to the corporate

---

[19] Exh. Q, Sander Depo at 136:11 -137:15; Exh. O, Poppe Depo at 65:8- 67:13.

[20] *See* Exh R, Preliminary Drivers Report (BSN 02883-84), and Detailed Listing of Time Sheets (BSN 0934-35) examples with date and time stamp.  *See also* Exh. Q, Sander Depo at 211-12 (identifying date and time stamp).

[21] Exh. S, Operation Manual at 21696; 21705-706; Appendix A, (Depo Testinmony of Plaintffs) Bradley Tr. at 137; Branco Tr. at 43; Branco Tr. at 75, 83-84;  Buono Tr. at 86-88; Cain Tr. at 91-92; Christie Tr. at 25; Ercole Tr. at 47-56; Gorman Tr. at 31-32; Hess Tr. at 60-61; Hess Tr. at 69; Hodges Tr. at 25-43; Jeudy Tr. at 46-49; Lawson Tr. at 32-34; Loetscher Tr. at 36-37; Morangelli Tr. at 51-59; Morris Tr. 69; Roseme Tr. at 67-68;  Severino Tr. at 81; Stanley, Tr. at 93-94;  Van Horn  Tr. at 85, 96;  Villatoro Tr. at 45; 53-55; York Tr. at 34, 42-43.

11

office.[22]   That transfer has to be done on Wednesday each week.[23]   At turn-in, Roto-Rooter

records the Technician's information on its database, including the date and time the information

was entered.[24]   Thus, Plaintiffs will be able to determine the date and time that a class member

performed turn-in and, if, as Plaintiffs allege, the payroll records do not record corresponding

administrative or meeting time or otherwise show that he was on the clock at that time, Roto-

Rooter's liability for failure to pay for this time will have been established based solely on the

records.[25]

Failure to pay mandatory meetings can be determined in a similar way.  The meetings are

scheduled at specific times and determining whether Technicians were paid for attending is

simply a matter of examining the payroll records to see whether they were on the clock at the

time of the meeting.  If not, a Technician could not have been credited for the time.[26]

Roto-Rooter also points out that those class members who claimed to have done turn-in

off the clock provided widely varying estimates of how long it took them to perform the various

tasks involved in turn-in.  The fact that class members provide varying estimates of the time

involved in turn-in is irrelevant to the class certification decision.  Given the fact that turn-in

---

[22] Exh. O, Poppe Depo at 25-26; Exh. Q, Sander Depo at 56-57, 70-72; Exh. S, Operation
Manual at 21696; 21705-706 (any technician questions must be resolved before transfer can
occur).

[23] Exh. O, Poppe Depo at 25-26.

[24] Exh. F. (Rec. Doc No. 159-7); Exh. O, Poppe Depo at 107 (Roto-Rooter does not purge
data from its system).

[25] Roto-Rooter points out that some Plaintiffs were told they would be paid for turn-in.
But such testimony is irrelevant.  Whatever managers may have told Technicians, the records
will bear out whether Technicians were, in fact, paid for turn-in time.

[26] Roto-Rooter points out that some branch offices held more meetings than others, but
that fact hardly affects the commonality of the claim.  The records will show whether mandatory
meetings were held, and to the extent they were, the records will show whether Technicians were
compensated or not.

activities are essentially the same for all Technicians,[27] the variation in time estimates provided by Technicians more likely reflect the class members' differing abilities to accurately estimate time than actual differences in the amount of time involved.  The trier of fact of fact can readily listen to a range of estimates and determine the time reasonably needed to perform turn-in based on just and reasonable inference. *See Reich v. IBP,* 820 F.Supp. 1315, 1328-1329 (D.Kan. 1993) aff'd 36 F.3d 1123, 1127 (10th Cir. 1994) (awarding reasonable time estimated to be necessary to don and doff protective equipment rather than actual time claimed by each individual).  Indeed, basing damages on evidence from a range of employees is more likely to result in an accurate estimate than basing damages on each individual worker's testimony as would happen if the class were not certified.  Even if particular branches take more time than others for turn-in for some reason, necessitating estimates for each branch, once liability has been determined (i.e. once it is shown that Technicians were not on the clock when they did turn-in), the need for some individual testimony regarding the amount of time involved (i.e. damages) should not defeat class certification. *In re Visa Check Antitrust Litigation,* 280 F.3d at 136.

### C.  Van and Equipment Maintenance

All Technicians were required by Roto-Rooter to maintain their vans.[28]  However, as a company-wide policy, Technicians had no way to record the time they expended maintaining their van and equipment.[29]  Because Technicians could not record the time, Roto-Rooter did not

---

[27] At turn in, all Technicians are required to reconcile their accounts, submit their paper work to Roto-Rooter, review their wage and hour records, resolve any issues, and meet with office staff or management as necessary.  Exh. O, Poppe Depo at 27:11-28:14; 32:24-36:21; 56:16-63-23; Exh S, Ops Manual BSN 21705-706.

[28] Exh. Q, Sander Depo at 26:6-28:9.

[29] *Id.* at  140:17-141:4 (Techs not able to record equipment maintenance time); and 148:9-150:16 (Techs not able to record van maintenance time); Exh. P. Employee Handbook,

13

pay them for it in accordance with State wage laws. All the deponents testified that they did

maintenance work off-the-clock.[30]  Indeed, some maintenance could only be done off-the-clock

because Technicians on the clock had to be prepared to respond to a call immediately while on

the clock,[31]  They could not be performing maintenance that prohibited them from responding

quickly.[32]  Plaintiffs' challenge to this policy of not paying for maintenance time raises the

common legal questions whether such time was compensable and whether Roto-Rooter's

uniform policy of not providing a mechanism for recording it violated state minimum wage laws.

Situations such as this where plaintiffs are aggrieved by a uniform policy of a defendant are

---

Time Tracking Section, BSN 1251-52 (does not provide for recording maintenance time*).  *See also, e.g.,* Cardwell Tr. at 112; 139-40, 177; Ercole Tr. at 191; Gorman Tr. at 116-17; Hodges Tr. at 41,43; Hollister Tr. at 70; Mills Tr. at 128; Smith Tr. at 168.

[30] Appendix 1, Bradley Tr. at 109, 187-189;  Branco Tr. at 71-72, 76-79, 166-68;  Buono Tr. at 77-81; Cain Tr. at 84-85, 153; Cardwell Tr. at 47-48, 150;   Castillo Tr. at 42- 43, 124; Christie Tr. at 22, 61-62;  Drejaj Tr. at 34-36, 43, 45-46, 99, 127-128;  Ercole Tr. at 169-172; Frazier-Smith Tr. at 35-36, 110-112; Gorman Tr. at 100-102; Harris Tr. at 32; 96; Hess Tr. at 41-44; Hodges Tr. at 24-25, 87; Hollister Tr. at 115-116,126-128; Jeudy Tr. at 125-126; Jones Tr. at 55-61; Lawson Tr. at 27, 80, 86; McMahon Tr. at 32, 92-93, 133-134, 148; Mills Tr. at 97-100; Morangelli Tr. at 59-61; Poczok Tr. at 151-152, 163-164  163-164, 165-166; Roeseme Tr. at 39, 135, 141; Saint Juste Tr. at 70-71; Severino Tr. at 31-32, 81, 134, 136-140, 155-157, 187; Smith Tr. at 73, 86, 152-153, 165;  Soto Tr. at 62, 64-65,179, 186; Stanley Tr. at 86-88, 121-122; Van Horn Tr. at 65-66, 74, 76-77, 189-191;  York Tr. at 114.

[31] Exh. P. Employee Handbook, Time Tracking Section, BSN 1251 (Techs must be ready for "immediate dispatch" during standby time); Appendix 1, Cain Tr. at 77; Cardwell Tr. at 42-43; Drejaj Tr. at 115-116:  Gorman Tr. at 15-16; Hollister Tr. at 115-116,126-128; Mills Tr. at 100; Morangelli Tr. at 43-44;  Severino Tr. at 139; York Tr. at 26-28.  .

[32] Appendix 1, Bradley Tr. at 93; Cain Tr. at 77-78; Cardwell Tr. at 41-43; Drejaj Tr. at 127-128; Frazier-Smith Tr. at 110; Gorman Tr. at 30, 83; Hodges Tr.at 87; Hollister Tr. at 115-116,126-128;  Jeudy Tr. at 125-126; Jeudy Tr. at 37,125-126; Kennedy Tr. at TR 56-57; 148-149; 159-160; McMahon Tr. at 133-134; Mills Tr. at 97-100; Morangelli Tr. at 47-48; Morris Tr. at 131-134; 141-142; Njamon Tr. at 139-140;  Poczok Tr. at 63-64; 151-152,  163-164, 165-166; Sabas Tr. at 99-100; Severino Tr. at 31;Van Horn Tr. at 66; Villatoro Tr. at 65-66; 71; 73; 98; Yasuna Tr. at 37-39; 82; York Tr. at 39-40.

precisely what the class action device is suited.  *In re Nassau Co. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006).

Roto-Rooter argues that class treatment of this claim is, nevertheless, inappropriate because some Technicians testified that they were able to do some portion of their van and equipment maintenance work while on "stand-by time" (and therefore were on the clock for at least that portion of their maintenance work), and because the estimates of the time spent off the clock showed considerable variation.  While it is true that Technicians' estimates of how much uncompensated time was devoted to van and equipment maintenance varied, and did so, in part, because some Technicians may have been able to perform some tasks on stand-by time, those facts do not mean that individual questions predominate over common questions.  The central question presented by the claim, whether van and equipment maintenance was compensable time and whether Roto-Rooter's policy of not creating a mechanism for claiming such time violated state law, is exactly like that in *Frank v. Gold'n Plump Poultry,* No. 04-CV-1018 (PJS/RLE), 2007 WL 2780504 (D. Minn. Sept. 24, 2007).  In *Gold'n Plump* the employer required workers to don and doff and clean protective equipment, but had no policy regarding payment for such work.  The court found that the failure to have a clear policy for this work which obviously could not all be performed on the clock was an actionable policy that could be challenged collectively despite the fact that some workers may have been able to do some of the donning, doffing, and cleaning during scheduled work time.  An employer cannot assign tasks to workers which it knows cannot all be performed during regular work hours, make no provision for how those tasks are to be compensated, and then claim that there is no common policy to challenge.  As in *Gold'n Plump,* Roto-Rooter's decision to assign van and equipment maintenance work to

Technicians without a way to record the time is a common policy decision which injures the class as a whole and is "properly challenged through a class action." *Id.* at *4.

Plaintiffs anticipate that damages for this issue can be determined on a class wide basis as well. All Technicians had to comply with the same maintenance requirements of Roto-Rooter.[33] In these circumstances, a trier of fact could establish damages based on the reasonable time necessary to perform the maintenance tasks, rather than the actual time expended by each individual technician. If some portion of the maintenance work could reasonably have been performed on stand-by time, the trier of fact could take that into account in determining the reasonable amount of time that had to be expended off-the-clock. While such a determination would be an estimate, having deliberately made the policy choice not to record time spent on maintenance activities, Roto-Rooter "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [they] kept records in accordance with the requirements of [29 U.S.C. § 211(c) ]." *Mt. Clemens Pottery,* 328 U.S. at 688.

This method of calculating damages based on the reasonable time needed to perform uncompensated work, rather than the actual time expended by each class member, is what is done in donning and doffing cases where all class members are required to perform similar uncompensated activities but may take differing amounts of time to perform them. *See Reich v. IBP,* 820 F.Supp. at 1328-1329.

The donning and doffing cases also are particularly relevant to this claim because, like *Gold'n Plump Poultry,* they make clear that the fact that some workers may be able to perform some of

---

[33] Exh. Q, Sander Depo at 26:6-28:10.

the uncompensated activities on the clock does <u>not</u> defeat class treatment where the employer required the work to be done but did not create a mechanism for recording the time it took to perform such activities forcing all or most class members to do it off-the-clock to some extent. *Cortez v. Nebraska Beef, Inc.,* 266 F.R.D. 275, 288 (D. Neb. 2010) (certifying Rule 23 class action for unpaid donning and doffing time under Nebraska minimum wage law even though some class members were allegedly able to do donning and doffing on the clock); *Garcia v. Tyson Foods,* 255 F.R.D. 678, 691 (D. Kan. 2009) (certifying Rule 23 class for donning and doffing time under Kansas minimum wage law even though some donning and doffing time may have been done on the clock); *McLaurin v. Prestage Foods, Inc.* __ F.R.D. ___, 2010 WL 4693662 at *12 (E.D.N.C. 2010) (certifying Rule 23 class for donning and doffing time under N. Carolina minimum wage law because defendants policy of not paying for donning and doffing time affected all members of the class; fact that workers spent different amounts of time off the clock did not mean individual questions predominated); *In re Tyson Foods,* 694 F.Supp2d 1372, 1379 (M.D. Ga. 2010) (refusing to decertify collective action challenge to Tyson's uniform policy not to pay for donning and doffing activities; the fact that some employees may have been compensated for some of those activities did not mean that individual questions predominated); *Kasten v. Saint-Gobain Performance Plastics Corp.,* 556 F.Supp.2d 941 (W.D. Wis. 2008) (certifying Rule 23 class under Wisconsin minimum wage law class because challenge to common policy of not paying for donning and doffing time predominated over individual questions).  As in the above cases, the fact that some Technicians may have been able to perform some part of their required maintenance activities on stand-by time does not defeat class

17

certification of Plaintiffs challenge to Roto-Rooter's uniform policy of not recording maintenance time.

## III.  ILLEGAL DEDUCTION CLAIM SATISFIES RULE 23(B)(3)

Plaintiffs' final claim alleges that Roto-Rooter's practice of reversing previously paid commissions as a result of call backs for warranty service, customer bad checks, and refunds issued to complaining customers violates state laws governing wage deductions.  This claim presents an initial legal question common to all of the state classes:  whether, in light of the structure of Roto-Rooter's uniform pay system, the practice of reversing previously paid commissions is a wage deduction, as Plaintiffs contend, or is simply the reversal of an advance prior to the final the calculation of the final wage, as Roto-Rooter contends.[34]  Rec. Doc No. 192 at 24.  If the reversals are found to be part of the calculation of the final wage, then no class member has a claim because, by definition, there has been no "wage deduction."  On the other hand, if the reversals are determined to be wage deductions, then it is simply a matter of applying state law to determine whether the deduction is legal.  If a deduction for call backs is illegal for one member of a state class, it will be illegal for all members of the class in that state.

Roto-Rooter contends that this claim is unmanageable because it will require the jury to apply the law of the 12 different States in which Plaintiffs raise this claim.  Roto-Rooter's concern is greatly exaggerated.  Nine of the States at issue flatly prohibit wage deductions for the

---

[34]  Contrary to Roto-Rooter's assertion, Rec. Doc. No. 192 at 35, this is not an individual question.  Roto-Rooter used the same wage payment system for all Technicians, and the reversals at issue are part of that wage system.  Thus, since the facts relating to the reversals are the same for all Technicians, and are uncontested, the question of whether the reversals constitute deductions or not would seem to be a legal question that the Court can decide for all class members.

kinds of things at issue here.[35]  Thus, if the reversals are determined to be wage deductions, then

liability is established for any reversals that occurred in those nine states. As for the remaining

three states, deductions are lawful if they are authorized by a contemporaneous authorization.[36]

To the extent that Roto-Rooter obtained authorizations, it used a limited number of forms, and it

should be a simple question of law whether a particular form satisfies the statutory requirements.

Thus, in the three states where deductions may be legal, the only question for the jury will be

whether Roto-Rooter has produced a signed copy of an acceptable form.  If it has, there is no

liability, and if it has not, there is.[37]

## IV. SUPERIORITY

Roto-Rooter relies on *Barrus v. Dicks Sporting Goods, Inc.,* __F.Supp. ___, 2010 WL

3075730 (W.D.N.Y. 2010), to argue that bringing class claims under multiple state wage statutes

---

[35]  CA, CO, HI, IN, NJ, NY, OH, and WA.  Connecticut allows wage deductions where "the employer has written authorization form the employee for deductions on a form approved by the commissioner." Conn.Gen.Stat. § 31-71e(2).  However the approved form makes clear that it cannot be used for the kinds of deductions at issue here.
http://www.ctdol.state.ct.us/wgwkstnd/forms/paydeduct1.htm.

[36]  Illinois allows deductions that are "made with the express written consent of the employee, given freely at the time the deduction is made" 820 ILCS §115/9 (4).  Minnesota only allows deductions for the reasons at issue here when the employee voluntarily authorizes the employer in writing to make the deduction "after the loss has occurred or the claimed indebtedness has arisen." Minn. Stat Ann. § 181.79.  North Carolina allows such deductions if there is a written authorization which "(i) is signed on or before the payday for the pay period from which the deduction is made; (ii) indicates the reason for the deduction; and (iii) states the actual dollar amount or percentage of wages which shall be deducted from one or more paychecks." NC Gen. Stat. §95-25.8

[37]  Defendants' argument that the reversals are treated differently in different states is irrelevant.  The reversals can be determined directly from electronic records in the same way in every state because Roto-Rooter tracks the reversals in their database.  Exh. Q, Sander Depo at 254:14-258:14.  Moreover, callbacks occurred in every state for which Plaintiffs seek to class that claim.  Hawaii is not one of the states seeking class treatment of the illegal deduction claim, and Roto-Rooter used callbacks in California during the applicable statute of limitations. Appendix 1, Castillo Tr.at 71.

is inherently unmanageable.  But *Barrus* is clearly distinguishable.  In that case the Plaintiffs

sought to certify a host of state statutory and common law claims under the laws of 36 states as

class actions, including claims for breach of contract, *quantum meruit*, unjust enrichment, fraud,

and conversion. *Id.* at *3.  The plaintiffs in *Barrus* conceded that the elements of these common

law claims varied from state to state, *id.* at *4, making it virtually impossible to litigate all of

those claims in a single action, as the court found. *Id.* at *5-8.  But that is a far cry from the

classes that Plaintiffs seek to certify.  Plaintiffs do not allege any common law claims at all; the

claims they seek to certify as Rule 23 class actions are brought, with the sole exception of the

illegal deduction claim, under state statues paralleling the FLSA provisions that have already

been certified for collective action treatment.  Like the FLSA, all of those statutes explicitly or

implicitly prohibit an employer from reducing wages below mandatory minimum wage by

shifting the employer's business expenses on to employees.[38]  Roto-Rooter's claim that

Minnesota and Washington do not is clearly wrong.  Thus, the legal elements of Plaintiffs' first

claim regarding business expenses are common to all of the state classes.

    As for Plaintiffs' uncompensated hours claim, Roto-Rooter points out that the state

minimum wage statutes at issue do not all use identical definitions of "hours of work."  It is true

that there are some minor wording differences between state statutes[39] but those are distinctions

without a difference insofar as the time at issue here.  Roto-Rooter does not argue, nor can it, that

the time for which Plaintiffs seek compensation – i.e. mandatory van and tool maintenance time,

---

[38] Appendix 2, Appendix of State Laws.

[39]  For example, as Roto-Rooter quotes the definitions of hours worked for Colorado, Connecticut and Illinois.  Rec. Doc. No 192 at 37.  But it is clear that the hours that Roto-Rooter required Technicians to expend doing required turn-in activities, attending required meetings,

time spent at mandatory turn-in and other meetings, and time considered to be work time by

Roto-Rooter but shaved from the hourly records – is non-compensable under any state statute.

Thus, the fact that the state minimum wage statutes at issue may define time in somewhat

different ways at the margins is irrelevant because all of the time at issue in this case is core

work time compensable under all of those statutes.[40] Thus, there will be no occasion for the jury

to apply different standards of work-time.  The only question for a jury will be whether such

uncompensated work time occurred and, if so, how much.

Finally, with respect to Plaintiffs' illegal deduction claim, Plaintiffs have demonstrated

above that, in all states, the claim turns on whether the commission reversals at issue are part of

the calculation of the final wage, or are instead deductions from wages.  If they are deductions,

then they are prohibited in nine of the 12 States for which this claim is made, with the other three

states allowing such deductions if there is a contemporaneous authorization from the employee.

That slight variation between states that bar deductions altogether and those that allow them with

proper authorization is not so complex or difficult as to make the handling of this claim

unmanageable.

Thus, Roto-Rooter's argument based on *Dick's Sporting Goods* that multiple state classes

will be unmanageable because of differences in State laws is simply untrue.  Roto-Rooter's

reliance on *Tyler v. Alltel Corp.,* 265 F.R.D. 415, 428-29 (E.D. Ark. 2010), is similarly

misplaced.  That case alleged claims under various state unfair and deceptive business practice

statutes -- statutes which differed markedly from state to state. The minimum wage and wage

---

and performing mandatory van and equipment maintenance fall squarely within each of those
definitions – a fact that Roto-Rooter does not dispute.

[40] Appendix 2, Appendix of State Laws.

payment laws at issue here do not differ in any respect material to the claims asserted by Plaintiffs.  For this reason, addressing Roto-Rooter's challenged policies on a class-wide basis will not only be manageable, but far superior as a method of adjudication than hundreds of individual claims.

## V.       THE CLASS REPRESENTATIVES SATISFY RULE 23(a)

Finally, Roto-Rooter argues that Plaintiffs have failed to satisfy the typicality and adequacy of representation requirements of Rule 23(a).  Those arguments are without merit.

With respect to typicality, while it is true that the class representatives for some state classes only worked in one of the branch offices in the state, Rule 23(a)(2) typicality does not require that a class representative have worked in each of the locations where class members were employed or even to have performed the exact same job.  What matters is whether the representative's and the class members' claims "arise[] from the same course of events," and rely on "similar legal arguments to prove defendant's liability." *Myers v. Hertz Corp.,* No. 02 Civ. 4325(BMC)(MLO), 2007 WL 2126264 (E.D.N.Y. July 24, 2007) at *6.  The class representatives here easily satisfy that requirement because they are challenging national policies of Roto-Rooter and widespread practices that can be proven on a national basis from Roto-Rooter's payroll records.  Specifically, Plaintiffs are challenging (i) the national policy of imposing business expenses on Technicians and making no provision in the payroll structure to increase wages to the mandatory minimum when those expenses cut into minimum wage; (ii) the national policy of requiring employees to perform tasks such as van and equipment maintenance without providing any mechanism for Technicians to record and be compensated for such time; (iii) the widespread practice of not recording turn-in and other meeting time and shaving hours of

work, both of which present questions common to all of the classes because they can be proven on a nationwide basis through examination of the payroll records; (iv) the policy of reversing commissions because of warranty work on Technicians initial work, reversals which, if found to be wage deductions, are prohibited by state law.   In as much as the class representative for each state raises those claims, he is typical of all of the class members in his state.[41]

Roto-Rooter's argument that the class representatives are not adequate under Rule 23(a)(4) because they "have not participated in even the most minimal way in this action," Doc 192 at 41, is similarly without merit.[42]   "Rule 23 requires that the named plaintiffs have adequate personal knowledge of the essential *facts* of the case .... For the legal underpinnings of their claims, plaintiffs are entitled to rely on the expertise of their counsel." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372 (S.D.N.Y. 2007) (citations omitted).   "[C]lass representatives are inadequately informed only when they have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 41 (E.D.N.Y. 2008) (citations omitted).   Particularly where the class comprises relatively low-skilled laborers, such as here, courts should not apply knowledge requirements that would run counter to a principal objective of the class action mechanism-to

---

[41]   The fact that some class representatives were not paid on a commission basis during a portion of their employment does not make them atypical.   What matters is whether they were injured by the same actions of Defendants and raise the same claims as the class members and, inasmuch as they were paid on a commission basis during a portion of their employment, they clearly meet that requirement.   For the same reason, the mere fact that a technician worked only three months does not preclude him from representing technicians who worked longer.

[42]   Roto-Rooter does not dispute that Plaintiffs meet Fed. R. Civ. P. 23(a)(4)'s requirements that the class representatives "have no interests that are antagonistic to the proposed class members" and that class counsel is qualified.   *Myers v. Hertz Corp.*, 2007 WL

facilitate recovery for those least able to pursue an individual action. *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 344–345 (S.D.N.Y. 2004).

Each of the class representatives' participation and knowledge of the facts is sufficient to represent a class. They have each submitted detailed declarations,[43] responded to interrogatories, produced documents responsive to Roto-Rooter's requests, and sat for deposition. They all understand that they represent a class of people,[44] and they all offered testimony in great detail about the claims there were bringing against Roto-Rooter.[45] That is sufficient participation and knowledge to satisfy Fed. R. Civ. P. 23(a)(4). *In re Zyprexa Products Liability Litigation*, 253 F.R.D. 69, 198 (E.D.N.Y. 2008), *vacated on other grounds UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 124 (2nd Cir. 2010); *Iglesias-Mendoza*, 239 F.R.D. at 363; *Noble*, 224 F.R.D. at 344-345.

Roto-Rooter's gratuitous references to the firing of Plaintiffs Hess and Branco do not make them inadequate representatives because, as both deponents explained, Roto-Rooter's alleged reasons for firing them were false.[46] *Gortat v. Capala Bros., Inc.,* No. 07-CV-3629 (ILG),

---

2126264 at 6.

[43] Rec. Doc. Nos. 160-172. Plaintiff LeVoid Bradley did not submit a declaration because he became a class representative after the Plaintiffs moved for class certification. Rec. Doc. No. 186.

[44] Appendix 1, Bradley Tr. at 59-60; Branco Tr. at 54-58; Cain Tr. at 53-54; Castillo Tr. at 30-31; Ercole Tr. at 31-33; Frazier-Smith Tr. at 21-23; Gorman Tr. at 16-17; Hess Tr. at 30-31; Kennedy Tr. at 33-36; McMahon Tr. at 22-23; Morangelli Tr. at 31-32; Poczok Tr. at 41-43; Richardson Tr. at 39-40; Sabas Tr. at 24; St. Juste Tr. at 45-47.

[45] *See, e.g.,* Rec. Doc. Nos. 192-2 through 192-7 (Deposition Transcripts) and Appendix 1.

[46] Cain Tr. 19-24; Branco Tr. 23-24.

24

2010 WL 1423018, 5-6 (E.D.N.Y. April 9, 2010) (disagreements not related to the matter in dispute are not relevant to the adequacy analysis). Even if the allegations were true, they would not be a basis for finding the representatives inadequate. *Benedict v. Altria Group, Inc.*, 241 F.R.D. 668, 674 (D.Kan. 2007) (even criminal acts are insufficient to defeat adequacy unless they present a conflict of interest or would affect her ability to prosecute the action vigorously.)

Plaintiffs presented substantial evidence that they meet the adequacy requirement and Roto-Rooter has presented no evidence to the contrary. Accordingly Plaintiffs satisfy the requirements of Rule 23(a)(4).[47]

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for class certification should be granted.

---

[47] Roto-Rooter challenges Mr. Cruz's status as class representative, but Mr. Cruz is not a class representative nor did he testify to having participated in a settlement. If Roto-Rooter intended to challenge Mr. Castillo as the California class representative, they have presented no evidence of a waiver of his claims in this action. *Liles v. American Corrective Counseling Services, Inc.*, 231 F.R.D. 565, 572 -573 (S.D. Iowa 2005) (finding that a factual dispute over waiver does not destroy adequacy).