UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x
ANTHONY MORANGELLI, FRANK ERCOLE, :
JASON CASTILLO, STEVE MCMAHON, :
EVENS SAINT JUSTE, JEFFREY GORMAN, :
TERRY LOETSCHER, JAMES SABAS, FRANK : 10 Civ. 0876 (BMC)
POCZOK, STEVEN HESS, FRITZ JEUDY, :
ALAN KENNEDY, LAWRENCE RICHARDSON, :
SHILO CAIN, DINO BRANCO, FREDERICK : **DEFENDANTS' STATEMENT**
WIGGINS, DANIEL HODGES, JR., JAMES : **PURSUANT TO LOCAL RULE 56.1**
HARRIS, BRYON E. FRAZIER-SMITH and :
LEVOID BRADLEY, individually and on behalf of :
all others similarly situated, :
        Plaintiffs, :
         :
    v. :
         :
CHEMED CORPORATION and ROTO-ROOTER :
SERVICES COMPANY, :
         :
        Defendants. :
———————————————————————— X

    Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, defendants Chemed Corporation ("Chemed") and Roto-Rooter Services Company ("RRSC") (together, "defendants"), submit in support of those portions of their Motion for Summary Judgment and/or Decertification of the Class and Class Actions that seek summary judgment the following statement of material facts as to which there is no genuine issue to be tried.

Plaintiffs' Responses to Defendants' Contention Interrogatories

    1.  Plaintiffs served their responses to defendants' interrogatories on November 24, 2011 (the "interrogatory response"), after the parties had completed their final exchange of discovery. Holtzman Decl. ¶ 8 & Ex. 2.

    2.  The interrogatory responses served on November 24, 2011 included spreadsheets identified as Exhibits A, B, C, and D. *Id.* ¶ 9 & Ex. 2.

3. On December 22, 2011, plaintiffs supplemented their interrogatory responses by serving upon defendants Exhibit A2. *Id.* ¶¶ 12-13, 15-16 & Ex. 4.

4. Exhibit A identifies all of the alleged "temporal impossibilities" upon which plaintiffs will rely to attempt to prove liability on their time-shaving claim. *Id.* ¶ 14.

5. Exhibits A and A2 identify all of the time records upon which plaintiffs will rely to attempt to prove liability on their time-shaving claim. *Id.* ¶ 20.

6. Exhibit A does not contain any entries for Messrs. McMahon, Christie, Hess, Drejaj, Smith, Branco, Frazier-Smith, Loetscher or Harris. *Id.* Ex. 2; *see also* Sander Decl. Ex. 2.

7. Exhibit A does not contain any entries for Mr. Hollister from after August 27, 2007, Mr. Gorman from after December 18, 2006, or Mr. Cardwell from after June 25, 2007. Holtzman Decl. Ex. 2; *see also* Sander Decl. Ex. 2.

8. Exhibit A2 does not contain any entries for Messrs. Hess, Drejaj, Villatoro, Loestscher, Hodges or Harris. Holtzman Decl. Ex. 4; *see also* Sander Decl. Ex. 3.

9. Exhibit A2 does not contain any entries for Mr. Hollister from after September 17, 2007. Holtzman Decl. Ex. 4; *see also* Sander Decl. Ex. 3.

10. Exhibit B contains all of the instances of allegedly unrecorded turn-in time that plaintiffs will present as part of their liability case. Holtzman Decl. ¶ 22 & Ex. 3.

11. Exhibit B does not contain any entries for Messrs. Castillo, Yasuna, Sabas, Soto or Kennedy. Holtzman Decl. Ex 2; *see also* Sander Decl. Ex. 4.

12. Exhibit B does not contain any entries for Mr. Hollister from after September 4, 2007. Holtzman Decl. Ex. 2; *see also* Sander Decl. Ex. 4.

KL3 2864353.1

13. On December 14, 2011, plaintiffs served on defendants a revised version of Exhibit D. Holtzman Decl. ¶ 24 & Ex. 6.

14. That version of Exhibit D contains all of the weeks that plaintiffs will present to show that they allegedly incurred business-related expenses that had the effect of bringing wages below the minimum wage for purposes of establishing liability. *Id.* ¶ 25 & Ex. 3

15. Exhibit D does not contain any entries for Messrs. Hollister, Poczok, Roseme, Buono, or Villatoro. *Id.* Ex. 6; *see also* Sander Decl. Ex 5.

16. Exhibit D does not contain any entries for Mr. Castillo from after December 12, 2006, Mr. Cardwell from after July 24, 2007, Mr. Soto from after November 22, 2005, Mr. Najmon from after October 18, 2008, Mr. Richardson from after June 26, 2007 or Mr. Cain from after May 15, 2007. Holtzman Decl. Ex. 6; *see also* Sander Decl. Ex. 5.

<u>*Ita, et al., v. Rooter Service Company, et al.*</u>

17. In April 2007, a group of technicians employed by RRSC in California commenced an action in the Superior Court of the State of California, County of San Mateo, captioned *Ita, et al. v. Roto-Rooter Services Company, et al.*, Civ. 462474 ("*Ita*"). Holtzman Decl. Exs. 10, 11.

18. The First Amended Complaint in *Ita* (the final version of that complaint) reflects that the plaintiffs in that case alleged, among other things, that RRSC had violated California law by: (i) "fail[ing] to pay Plaintiffs overtime wages for any and all work performed in excess of 8 hours per day and/or for any and all work performed in excess of 40 hours per week"; (ii) "requir[ing] Plaintiffs to expend their own monies to conduct their employers' business" and to "shoulder . . . business expenditures which should have been borne by their employer"; and (iii) "mak[ing] various deductions from Plaintiffs' wages for certain items,

including but not limited to deductions for . . . customer call-backs . . . ." *Id.* Ex. 10 at ¶¶ 33, 34, 63, 70.

19. On August 6, 2008, the *Ita* court entered a final order certifying a class action and approving a class settlement. *Id.* Ex. 11 at CHEMED/RR 00054027.

20. The court certified a class consisting of "all persons who are or were employed by [RRSC] as plumbers, sewer and drain technicians or employees, combination plumbing/sewer and drain technicians or employees . . . whether hourly-paid or commissioned, and with or without expenses, at any time from April 24, 2003 to May 19, 2008, the class period, in the State of California." *Id.*

21. The *Ita* court found that "no member of the class had requested exclusion (opted-out) from the class or filed an Objection to the Settlement." *Id.*

22. The court ordered that "[u]pon entry of this Order and Distribution of the Settlement Funds under the terms of the Settlement Agreement, each Class Member shall be deemed to have released Defendants for any and all claims regarding the allegations of unpaid reimbursements and wages, interests and penalties through the date of entry of this Order." *Id.* at CHEMED/RR 00054029.

23. The Settlement Agreement approved by the court in *Ita* states that all members of the class in *Ita* released RRSC and its "parent corporations" and "affiliates," among others, from

> all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with the causes of action asserted in the Complaint, including, without limitation, any and all claims for alleged *failure to pay overtime*, waiting time, travel time, *call back*, missed meal and rest breaks, on-call time, charges for replacement of tools and equipment and time expended in call back due to customer complaint and other similar deductions from wages; and, as related to the foregoing, for alleged

unlawful, unfair and/or fraudulent business practices under California Business and Professions Code § 17200, et seq.

*Id.* Ex. 12 at 5.

24.　Messrs. Castillo and Yasuna both received monetary payments in exchange for releasing their claims asserted against RRSC in *Ita*. *Id.* Ex. 13 at CHEMED/RR 0054213-15; *see also* Castillo Tr. 8; Yasuna Tr. 11, 98-99.

California Policies

25.　RSSC has a separate Employee Handbook for its California employees (the "California Handbook") that sets forth policies unique to that state. Holtzman Decl. Ex. 9.

26.　On January 14, 2008, Gary Sander, RRSC's Executive Vice President, issued a memorandum regarding "Pay Considerations Unique to California" (the "California Memo") stating that "[w]e should adhere to the[] requirements [stated herein] immediately." *Id.* Ex. 14 at CHEMED/RR 00047651-00047654.

27.　The California Memo states that "In most cases, the Company will [] provide a van" to technicians. *Id.* at CHEMED/RR 00047653.

28.　RRSC provided Mr. Castillo with a company-owned van and paid for the van's expenses during the period after January 14, 2008. Castillo Dep. 37-40.

29.　Exhibit D to plaintiffs' interrogatory responses does not include any entries for Mr. Castillo from after January 14, 2008. Holtzman Decl. Ex. 6.

30.　The California Memo also states that "[c]ommissioned employees should not be charged for call backs . . . . Any technician going on a job classified as a call back, including the responsible technician, will be compensated based on the commercial plumbing rate for the time spent on the job." *Id.* Ex. 14 at CHEMED/RR 00047654.

31. The California Handbook does not contain a provision discussing a negative OPCC adjustment in the event of a call back and instead provides a mechanism for the technician performing the call back to receive compensation. *Id.* Ex. 9 at CHEMED/RR 00047567.

32. After January 14, 2008, RRSC stopped making commission adjustments for call-backs and began paying technicians at an hourly rate for the call back work they performed. Castillo Tr. 71-72; Sander 10/4/11 Tr. 62; Sander 10/5/11Tr. 310-11.

33. Mr. Castillo did not have a negative commission adjustment associated with a call-back subsequent to January 14, 2008. Sander Decl. ¶ 79 & Ex. 24.

RRSC's Call Back Policy and Procedure

34. RRSC's Reversal of Commission Policy, which has appeared in the Employee Handbook since February 2008, states:

> Because commissions are subject to adjustments under the OPCC system, *all* commissions are considered advances until the invoice is paid and the warranty period expires.
>
> The Company provides a listing of OPCC adjustments in each technician's Weekly Driver's Report. When a technician signs his weekly Detailed Listing of Time Sheets, he also acknowledges this OPCC system and approves the OPCC adjustments on his most recent driver's report, including any reductions in commissions resulting from a negative OPCC adjustment. Accordingly, if a technician has any question about any commission adjustment, he/she should raise it immediately with his supervisor or the General Manager.

Holtzman Decl. Ex. 8 at CHEMED/RR 00005699; *see also* Stewart Tr. 29 (technicians' pay is "considered an advance until the job is paid or the guarantee is exhausted").

35. Twenty-eight of the thirty-nine Discovery Plaintiffs have signed acknowledgments stating that they "understand that it is my responsibility to read and comply with the policies contained in the Handbook and that they have "full access to the Handbook, which is readily available . . . in a public place at my work location." Holtzman Decl. Ex. 7.

36. Ten copies of the Handbook are available at each branch for technicians' review. Stewart Tr. 39.

37. Technicians are provided with a Detailed Listing of Time and a Preliminary Drivers' Report each week in connection with their turn-in, which they are required to review for accuracy. Sander 10/29/10 Tr. 58-59, 151; *see also* Holtzman Decl. Exs. 15, 16, 17.

38. If a technician agrees with the information provided on these documents, he is asked to sign an authorization that appears on the Detailed Listing of Time. Sander 10/29/10 Tr. 58-59, 151; *see also* Holtzman Decl. Exs. 15, 16, 17.

39. The authorization has, since February 2008, specifically stated:

> I agree to the terms of Roto-Rooter's OPPCC adjustment system. I agree to adjustments indicated on my Preliminary Driver's Report for [that week]. I authorize any commission reduction caused by negative OPCC adjustments.

Holtzman Decl. Ex. 18.

40. All of the Discovery Plaintiffs employed after February 2008 have signed these authorizations. *Id.*

41. RRSC maintains an Operations Manual, which is loaded to the company's Lotus Notes system by the accounting department. Sander Decl. ¶ 84

42. The Operations Manual is available to all branch managers and administrative personnel. *Id.*

43. On February 20, 2006, the Operations Manual was updated and distributed to each branch with instructions regarding documentation of OPCCs. *Id.* ¶ 85.

44. The version of the Operations Manual distributed on February 20, 2006 reflects that "[i]f a job is a callback (recall), the system will generate an OPCC that will credit

the driver(s) that completed the job and charge the driver(s) that received the revenue originally." *Id.* ¶ 85 & Ex. 25.

45. Even before February 2006, call-backs were assessed in this manner and disclosed to technicians on a weekly basis in the Preliminary Drivers Report. *Id.* ¶ 86; *see also* Holtzman Decl. Ex. 19.

Relationship Between Chemed and RRSC

46. Chemed is RRSC's indirect parent corporation. Williams Tr. 17.

47. Chemed is not involved in RRSC's day-to day business operations. Sander Decl. ¶ 81.

48. Chemed is not directly responsible for setting RRSC's employment policies, compensation or time-keeping policies. Williams Tr. 18; Sander Decl. ¶ 81.

49. Although Chemed's officers were consulted when RRSC changed its payroll and time tracking policies in 2001, RRSC's management team made the "ultimate decision" to implement the changes. Williams Tr. 30-31.

50. Chemed is not involved in RRSC's employment decisions, such as those involving the hiring or termination of technicians, branch administrative personnel, supervisors or general managers. Sander Decl. ¶ 82; *see also* Arquilla Tr. 58 (describing how he went to a branch to terminate a general manager).]

51. It is not within the responsibility of Chemed's CFO or Director of Internal Audit to even suggest that an RRSC employee should be terminated, even if implicated in wrongdoing in connection with an investigation by Internal Audit. Eaton Tr. 286; *see also id*. at 277 ("[I]t is not my responsibility to hire or fire people or even call for their termination."), 267

KL3 2864353.1

(Chemed's internal auditor left "it up to [RRSC's officers] to make the employment decision" about implicated employees).

Dated: New York, New York
February 10, 2012

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:   /s/ Robert N. Holtzman
      Robert N. Holtzman
      Kerri Ann Law
      Jared I. Heller
      Eileen M. Patt

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
rholtzman@kramerlevin.com
klaw@kramerlevin.com
jheller@kramerlevin.com
epatt@kramerlevin.com

Attorneys for Defendants

- 9 -

KL3 2864353.1