UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
ANTHONY MORANGELLI et al.,                                        :
                                                                  :
                          Plaintiffs,               :    **MEMORANDUM**
                                                                  :    **DECISION AND ORDER**
      -against-                                                  :
                                                                  :    10 Civ. 0876 (BMC)
CHEMED CORPORATION et al.,                                        :
                                                                  :
                          Defendants.               :
                                                                  :
----------------------------------------------------------------- X

**COGAN,** District Judge**.**

      Familiarity with the factual background and procedural history of this litigation is presumed. Defendants have moved for reconsideration of the Court's February 1, 2013 Memorandum Decision and Order (the "February Order") to that extent that it denied defendants' motion for (1) summary judgment on plaintiffs' "Turn-in" Claims in California; (2) summary judgment on plaintiffs' Time-Shaving Claims in California, Connecticut, Indiana, Missouri, and Washington; and (3) decertification of the Fair Labor Standards Act ("FLSA") collective action and state class action Time-Shaving Claims.[1] For the reasons set forth below, defendants' motion for reconsideration is granted in part and denied in part.

## DISCUSSION

      The standard for granting a motion for reconsideration is "strict." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Such motions should "generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id.

---

[1] Since the instant motion was brought by both defendants, the Court will use the term "defendants" even though plaintiffs' claims against Chemed Corp. were dismissed in the February Order.

Reconsideration motions "may not advance new facts, issues, or arguments not previously presented to the Court." See Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc., 265 F.3d 97, 115 (2d Cir. 2001) (internal quotation marks omitted).

I.  The California "Turn-in" Claims

Defendants first seek reconsideration of the Court's denial of their motion for summary judgment dismissing the "Turn-in" Claims of the California plaintiffs. There is no dispute that the evidence that was before the Court when I ruled on the parties' summary judgment motions did not show a single instance of improperly recorded "turn-in" time for California plaintiffs. Defendants argue that summary judgment should have been granted dismissing these claims for lack of evidence. See generally Pepsico, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) ("the [summary judgment] burden on the moving party may be discharged by 'showing' – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (internal quotation marks omitted). In support, defendants note that the Court granted summary judgment dismissing another category of claims – the California Business Expense Claims – where there was a similar evidentiary deficiency.

There is, however, a crucial difference between the California "Turn-in" Claims and the California Business Expense Claims. The fact that the evidentiary record on summary judgment showed no instances of improper recording of "turn-in" time for California plaintiffs may have been entirely attributable to chance. Discovery was only taken from two plaintiffs who worked in California – Castillo and Yasuna[2] – and the Court granted summary judgment dismissing their personal "Turn-in" Claims. See February Order, at 57. I noted, however, that there was "substantial intra-state disparity regarding the number of instances of unrecorded 'turn-in' time alleged," id. at 52, and, since other members of the California class may have a "Turn-in" Claim

---

[2] Yasuna was also a member of the Hawaii class.

2

even though Castillo and Yasuna did not, I declined to dismiss the claims of the entire class in the February Order. Instead, I afforded plaintiffs the opportunity to find a substitute California class representative who can assert the claim, just as I did for other class claims where the class representative's claims were dismissed. Id. at 56. The new California class representative may well be able to state a "Turn-in" Claim.

With regard to the California Business Expense Claims, on the other hand, the record did not merely show a lack of alleged violations after January 14, 2008, but that absence was consistent with a change in defendants' expense reimbursement policies throughout California. Id. at 13-14. It was undisputed that, as of that date, Roto-Rooter mandated the payment of its California technicians' van-related and other employment-related expenses.[3] It was, thus, reasonable for the Court to conclude that the lack of Business Expense Claims for California plaintiffs after that date was the result of the policy change, rather than an anomaly resulting from the choice of Castillo and Yasuna as California Discovery Plaintiffs.

As courts have observed, "a class has a legal status separate from the named plaintiff [and], thus, should the class representative become inadequate, substitution of an adequate class representative is appropriate to protect the interests of the class." In re Currency Conversion Fee Antitrust Litig., MDL No. 1409, M 21-95, 2005 WL 3304605, at *3 (S.D.N.Y. Dec. 7, 2005). The same logic applies to Discovery Plaintiffs. Given the separate legal status of the class, the fact that a particular Discovery Plaintiff is unable to support a particular claim does not destroy the class's right to assert that claim, especially where instances of the supposed violation are

---

[3] Defendants note that Roto-Rooter's nationwide policy, which was also applicable in California, required technicians to be paid for "turn-in" time. But, as defendants recognize, plaintiffs' "Turn-in" Claims are not based on an unlawful policy but are instead based on an allegedly common practice among Roto-Rooter managers of deviating from this policy. Although these deviations, if any, occurred due to the conduct of particular managers, plaintiffs can establish liability through common proof, namely a comparison of Roto-Rooter's time records and "turn-in" records." See February Order, at 53-54. Accordingly, the Court's continued certification of the "Turn-in" Claims is consistent with Rule 23(a)(2)'s commonality requirement. See infra Section III (discussing the commonality requirement in the context of the Time-Shaving Claims).

3

known to vary.[4] Here, the Court certified (and later denied decertification of) the plaintiff class for California "Turn-in" Claims based on plaintiffs' ability to show instances of uncompensated "turn-in" time on a class-wide basis. Members of that class may very well have viable claims even if the current Discovery Plaintiffs do not and, consequently, summary judgment dismissing the class's claims is not appropriate. Accordingly, defendants' motion for reconsideration with regard to the California "Turn-in" Claims is denied.

## II. The State Time-Shaving Claims Classes

Defendants also seek reconsideration of the Court's denial of summary judgment on plaintiffs' Time-Shaving Claims in California, Connecticut, Indiana, Missouri, and Washington based on a similar argument. In their original motion, defendants sought decertification of the Time-Shavings Claims classes as well as the dismissal of the Time-Shavings Claims for certain plaintiffs and classes.

As the Court observed in the February Order, plaintiffs identified instances of alleged time-shaving by applying a number of queries to technician time records, the results of which were summarized in Exhibits A and A2 to the Declaration of Gary Sander. The Court decertified the Time-Shaving Claims for the FLSA collective action and state class actions based on all of plaintiffs' queries except Query 4. See February Order, at 51. Exhibit A, however, included instances of purported time-shaving identified by Queries 1 through 4 and did not delineate the instances that were identified solely by Query 4. Thus, at the time of the February Order, the

---

[4] This does not mean that plaintiffs may repeatedly request substitution of Discovery Plaintiffs. In the February Order, the Court afforded plaintiffs an opportunity to replace inadequate class representatives. Although the Court declines to rule on the issue now, plaintiffs are cautioned that if the new class representatives cannot provide adequate evidence to support their class' claims, given the late stage of this litigation, the Court is not inclined to afford plaintiffs additional bites at the apple and may entertain another summary judgment motion from defendants at the appropriate time. If plaintiffs need to designate several class representatives within a particular state in order to keep all of the class claims in that state viable, the Court would be amenable to such a request.

Court was not presented with information concerning the instances of purported time-shaving identified by Query 4.

Since then, plaintiff have provided a new exhibit which lists, for the current Discovery Plaintiffs, the 57 instances of time-shaving identified by Query 4. Defendants argue that because Query 4 does not identify any instances of time-shaving for any Discovery Plaintiffs from California, Indiana, Missouri, or Washington, and does not identify any timely instances for any Discovery Plaintiffs from Connecticut, the Time-Shaving Claims in those states should be dismissed based on a lack of evidence.[5] Further, defendants contend that because Query 4 shows no timely instances of time-shaving for a number of the Discovery Plaintiffs, that the Time-Shaving Claims for those particular plaintiffs should be dismissed.

For the same reasons discussed in the context of the California "Turn-in" Claims, the Court denies defendants' request to dismiss the Time-Shaving Claims for the California, Connecticut, Indiana, Missouri, and Washington classes. The fact that the records for the current Discovery Plaintiffs did not show instances of time-shaving identified by Query 4 may also be the product of chance. Members of the California, Connecticut, Indiana, Missouri, and Washington classes may be able to state viable Time-Shaving Claims even if the current class representatives and Discovery Plaintiffs cannot. The Court has already ruled that plaintiffs will have the opportunity to substitute class representatives for a number of these classes. Moreover, defendants ignore the fact that the Court did not dismiss the Time-Shaving Claims based on

---

[5] Plaintiffs' argument that defendants are improperly seeking relief on reconsideration beyond what they sought in the original decertification motion is unavailing. In their original motion, defendants sought summary judgment on the Time-Shaving Claims for the Indiana class because, according to Exhibit A, Indiana was the only state for which none of the Discovery Plaintiffs showed any instances of purported time-shaving. The fact that defendants now seek summary judgment with respect to a longer list of state classes is not a request for new relief or a new argument, see Polsby v. St. Martin's Press, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) ("On [a reconsideration] motion, a party may not 'advance new facts, issues or arguments not previously presented to the Court.'"), but is instead the logical extension of defendants' original position, the Court's ruling limiting the Time-Shaving Claims to instances identified by Query 4, and the fact that Exhibit A did not identify which instances were the result of which queries.

5

Queries 1-3, 5, and 6, but merely decertified those claims because of the need for individualized examination. Dismissing all of the Time-Shaving Claims based on a lack of instances identified by Query 4 is inappropriate as many plaintiffs may have viable Time-Shaving Claims based on the other queries, even though those claims cannot be asserted on a class-wide basis.

The outcome is different, however, with regard to the Discovery Plaintiffs who, according to plaintiffs' new exhibit, do not show any timely instances of time-shaving identified by Query 4. As the Court held in the February Order, "[i]f there is no evidence that a plaintiff – whether a Discovery Plaintiff, a class representative, or both – suffered an alleged injury within the relevant limitations period, that plaintiff's claim must be dismissed on summary judgment." Id. at 56-57. Accordingly, the Court dismisses the certified Time-Shaving Claims based on Query 4 for the following plaintiffs: Castillo, Yasuna,[6] McMahon,[7] Hollister, St. Juste,[8] Christie, Gorman,[9] Sabas,[10] Cardwell,[11] Hess,[12] Kennedy,[13] Bradley, Van Horn,[14] Drejaj,

---

[6] In the February Order, the Court also dismissed the Time-Shaving Claims of plaintiffs Castillo and Yasuna to the extent required by the Ita release. The Court directed plaintiffs to designate another class representative for the non-dismissed California Time-Shaving Claims. Yasuna is also a Hawaii plaintiff and the Court dismissed the Hawaii Uncompensated Hours Claims in the February Order for state-specific reasons.

[7] Plaintiff McMahon's FLSA and state Time-Shaving Claims were dismissed in the February Order and the Court noted that plaintiffs must designate another class representative for these claims in Colorado. Since the Time-Shaving Claims for the two other Colorado Discovery Plaintiffs, Lawson and Earl, remain viable, the Court encourages plaintiffs to designate one of these plaintiffs as the class representative for the Time-Shaving Claims in Colorado.

[8] Plaintiff Hollister's FLSA and state Time-Shaving Claims were dismissed in the February Order. The Court has now dismissed the Time-Shaving Claims of plaintiff St. Juste, the Connecticut class representative. Accordingly, plaintiffs will be afforded an opportunity to substitute a new Connecticut Time-Shaving Claims class representative for St. Juste.

[9] Plaintiff Christie's FLSA and state Time-Shaving Claims were dismissed in the February Order. The Court has now dismissed the Time-Shaving Claims of plaintiff Gorman, the Florida class representative. Accordingly, plaintiffs will be afforded an opportunity to substitute a new Florida Time-Shaving Claims class representative for Gorman. Since the Time-Shaving Claims of the other Florida Discovery Plaintiff, Cruz, remain viable, the Court encourages plaintiffs to designate Cruz as the class representative for the Time-Shaving Claims in Florida.

[10] As a Hawaiian plaintiff, Sabas' Time-Shaving Claims were also dismissed in the February Order for state-specific reasons.

Morangelli, Smith,[15] Branco, Stanley,[16] Frazier-Smith, Mills,[17] and Richardson.[18]  If any of these plaintiffs have decertified Time-Shaving Claims based on the other queries, those claims are not dismissed.

### III.     Certification of the Time-Shaving Claims

Finally, defendants ask the Court to reconsider its denial of defendants' motion for decertification of the FLSA collective action and state class action Time-Shaving Claims.

As defendants state, "[t]here is no dispute in this case about whether time-shaving that results in a failure to pay overtime or minimum wage constitutes a violation of law. . . . The question at issue . . . is whether and to what extent time-shaving occurred."  Defendants argue that this second question – whether and to what extent time-shaving occurred – is not capable of

---

[11] Although plaintiff Cardwell's Time-Shaving Claims are now dismissed, the Time-Shaving Claims of the Illinois class representative, Poczok, and the other Discovery Plaintiff, Soto, remain viable.

[12] Plaintiff Hess's FLSA and state Time-Shaving Claims were dismissed in the February Order and the Court noted that plaintiffs must designate another class representative for these claims in Indiana.

[13] Since Kennedy is the Minnesota class representative, the Court will afford plaintiffs an opportunity to substitute a new Minnesota Time-Shaving Claims class representative.  The Court notes that the Time-Shaving Claims of the other Minnesota Discovery Plaintiff, Najmon, remain viable and encourages plaintiffs to designate Najmon as the class representative for the Time-Shaving Claims in Minnesota.

[14] Since Bradley is the Missouri class representative and Van Horn is the only other Missouri Discovery Plaintiff, the Court will afford plaintiffs an opportunity to substitute a new Missouri Time-Shaving Claims class representative.

[15] Since Morangelli is the New York class representative, the Court will afford plaintiffs an opportunity to substitute another New York Time-Shaving Claims class representative.  The Time-Shaving Claims for two of the other New York Discovery Plaintiffs, Buono and Ercole, remain viable and the Court encourages plaintiffs to designate one of these plaintiffs as the class representative for the Time-Shaving Claims in New York.

[16] Although the Time-Shaving Claims for plaintiffs Branco and Stanley are now dismissed, the Time-Shaving Claims of the Ohio class representative, Cain, remain viable.

[17] Since Frazier-Smith is the Washington class representative and Mills is the only other Washington Discovery Plaintiff, the Court will afford plaintiffs an opportunity to substitute a new Washington Time-Shaving Claims class representative.

[18] Since Richardson is the North Carolina class representative, the Court will afford plaintiffs an opportunity to substitute another North Carolina Time-Shaving Claims class representative.  The Time-Shaving Claims for the other two North Carolina Discovery Plaintiffs, Morris and Villatoro, remain viable and the Court encourages plaintiffs to designate one of these plaintiffs as the class representative for the Time-Shaving Claims in North Carolina.

7

class-wide resolution for two reasons. First, any time-shaving that took place was not the result of a nationwide Roto-Rooter policy; to the contrary, Roto-Rooter's policy prohibited time-shaving. Second, since the Court narrowed the Time-Shaving Claim, the sheer paucity of remaining time-shaving instances suggests that class-wide resolution is inappropriate.

With regard to defendants' first argument, there is no dispute that any time-shaving was the result of local managers' conduct rather than a national policy. Defendants claim that the absence of a national policy makes the Court's denial of decertification of the Time-Shaving Claims in the February Order inconsistent with Wal-Mart, Inc. v. Dukes, __U.S.__, 131 S. Ct. 2541 (2011). The Court disagrees. In Dukes, the Supreme Court held that, in order to satisfy Rule 23(a)(2)'s commonality requirement, the claims of a plaintiff class "must depend upon a common contention" and that common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2251. The Supreme Court reasoned that a nationwide class alleging that Wal-Mart managers engaged in sex discrimination through exercising their discretion to deny women promotions did not satisfy the commonality requirement because, even though company-wide statistical data was available, absent some corporate policy "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." Id. at 2254. In other words, because the alleged illegality arose from individual managers' exercise of their discretion, company-wide promotion statistics were incapable of demonstrating unlawful conduct for all the class members. Thus the Dukes plaintiffs were "unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions." Id.

Dukes is clearly distinguishable from the facts at issue here. Defendants' mistake is to assume that the absence of a Roto-Rooter company-wide policy authorizing or encouraging time-shaving means there is no basis by which plaintiffs can satisfy the commonality requirement. The key consideration in Dukes was not whether the source of the unlawful practice or policy was common to the company or was the result of local decisions. What mattered, rather, was whether the disputed issue could be resolved through common *proof*. In Dukes, the company-wide data about practices at the regional level was incapable of serving as common proof of the disputed issue – unlawful discrimination. Here, however, as defendants admit, the disputed issue is simply "whether and to what extent time-shaving occurred." The Court limited plaintiffs' Time-Shaving Claims to Query 4 because defendants failed to identify *any* possibly innocent explanations for the "temporal impossibilities" in defendants' time records identified by that query. Thus, unlike in Dukes, there are no individualized questions about the validity or invalidity of a manager's use of discretion. A "temporal impossibility" allegedly always demonstrates improper time-shaving. If plaintiffs prove this allegation, then they have established defendants' liability to each plaintiff through defendants' records "in one stroke." Id. at 2251. Accordingly, the Court's observation in the February Order that "[t]he fact that some Discovery Plaintiffs were not affected by the purported time-shaving practice or were affected to different extents does not undermine plaintiffs' ability to establish liability – *i.e.* to prove that Roto-Rooter altered employee time records for illegitimate reasons – through generalized proof," February Order, at 44, was entirely consistent with Dukes.

The new cases relied on by defendants in their reconsideration motion are not controlling on this Court and they do nothing to alter the Court's conclusion. In any case, all of them are distinguishable because, unlike here, plaintiffs in those cases made no showing that they would

9

be able to use defendants' records to establish liability on a class-wide basis. For example, in Ordonez v. Radio Shack, Inc., No. CV 10-7060-CAS, 2013 WL 210223 (C.D. Cal. Jan. 17, 2013), plaintiffs sued Radio Shack for uncompensated hours, including time spent working off-the-clock. The Ordonez court held that certification of the off-the-clock hours subclass was not appropriate because there was "insufficient evidence that any alleged off-the-clock work was due to a standardized employment practice, rather than a product of the vagaries of the store an employee worked in, the time of year, or the manager who was in charge." Id. at *8. However, the only evidence of hours being worked off-the-clock consisted of statistical evidence regarding the low amount of overtime hours worked by employees and "anecdotal evidence of off-the-clock work." Id. Unlike here, there were no employer records that could establish liability for each member of the class. Id. at *9 ("the individualized assessment necessary to ascertain whether there were in fact any employees who were told to work 'off-the-clock' would not be susceptible to common proof."). See also Cortez v. Best Buy Stores, LP, No. CV 11-05053 SJO, 2012 WL 255345, at *6-10 (C.D. Cal. Jan. 25, 2012) (ruling that a proposed class did not satisfy the commonality requirement where all of the allegedly illegal employment actions were conducted through oral conversations of which there were no records, and, thus unlawful changes to time records could not be distinguished from legitimate changes to time records based on class-wide proof). Cf. Brickey v. Dolgencorp, Inc., 272 F.R.D. 344 (W.D.N.Y. 2011) (declining certification under the FLSA and Rule 23 where the employer's policy was not facially illegal and did not have the effect of forcing managers to violate the FLSA, but not discussing whether any common proof of unlawful practices was available).

10

Moreover, the Court's February Order explicitly relied on and cited Dukes to support its conclusion on this issue. Defendants' argument does not point to any consideration that the Court overlooked and, thus, provides no basis for reconsideration of its prior ruling.

Defendants' second argument, on the other hand, is based on considerations that have only become apparent in light of the Court's February Order. Plaintiffs' new exhibit which lists instances of "temporal impossibilities" identified solely by Query 4 contains, in defendants' view, relatively few instances of time-shaving. The new exhibit identifies 57 instances of time-shaving which correspond to only 15 of the 39 current Discovery Plaintiffs. Further, 42 of these instances (74%) relate to seven plaintiffs from three states. According to defendants, the new exhibit does not identify a "sufficient [number of] instances of 'temporal impossibilities' for the jury to conclude that defendants impermissibly altered time-records [sic] on a *class-wide* basis." They argue that a jury should not "be permitted to find classwide liability based upon a single incident (or even two or three incidents) of alleged time-shaving, across multiple technicians working in multiple branches under a variety of managers over the several years within the class periods[.]"

Yet, despite defendants' repeated protests, this is exactly the class (and sub-classes) that the Court has certified. The Court's continued certification of the Time-Shavings Claims classes is premised on its conclusion that whether the 'temporal impossibilities' identified by Query 4 demonstrate unlawful conduct can be proved "in one stroke" regardless of what state, branch, year, or manager was involved. The prospect of finding Roto-Rooter liable for this conduct, even though it took place at various times and in various locations, based on representative evidence of its alleged impropriety is exactly the purpose of the class action mechanism.

11

To the extent defendants are concerned about the small number of Discovery Plaintiffs in the Time-Shavings Claims classes, their concern is premature. As discussed, plaintiffs will have the opportunity to designate new class representatives on the time-shaving issue for a number of state classes. Moreover, although Roto-Rooter employs over 1,600 technicians nationwide, discovery has only been taken from 39 technicians. If, after discovery has been taken from substituted class representatives, it appears that plaintiffs are unable to demonstrate sufficient numerosity to litigate all or some of their Time-Shavings Claims on a class-wide basis, decertification may be appropriate. But, at this point, the Court is unwilling to hold that there are an insufficient number of technicians with Time-Shavings Claims for them to proceed as a class.

## CONCLUSION

Defendants' motion for reconsideration [264] is granted in part and denied in part as set forth above.

**SO ORDERED.**

                                                      U.S.D.J.

Dated: Brooklyn, New York
       March 25, 2013